ROUGET D. JENKINS *v.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

KING, C. J., MURPHY, ALCORN, SHANNON and COLES, Js.

Argued November 5—decided December 15, 1964

*Leon R. Nemore* and *Elsie K. Nemore,* for the appellant (plaintiff).

*Snow G. Munford,* for the appellee (defendant).

KING, C. J.   On August 14, 1958, the plaintiff, while operating his automobile in Manchester, Connecticut, collided with several concrete abutments. The collision caused injuries to his wife, Patricia, a passenger in the car.   The defendant insurance company, a Pennsylvania corporation, had issued the plaintiff a policy which was in full force and effect at the time of the accident and which insured him against liability for bodily injuries "sustained by any person . . . arising out of the ownership, maintenance or use" of the plaintiff's automobile. The policy was issued in New York.

The defendant denied liability under the policy, and refused to defend any action brought by the wife, on the ground that the wife's claim was an interspousal claim against her husband and, as such, was excluded from coverage by § 167 (3) of the New York Insurance Law.   That section provides that a spouse's injuries are not within the coverage of an automobile liability insurance policy "unless express provision relating specifically thereto is included in the policy".

The defendant does not, and in reason could not, question that the wording of the insurance policy, considered apart from the New York statute, clearly covered any liability of the plaintiff to his wife arising from the accident. On the other hand, if the acci-

dent had occurred in New York, the policy, because of the statute, clearly would not have covered that liability. Thus, the real question is whether, under the facts of this case, the New York statute is to be given operative effect.

The plaintiff's wife sued her husband in Connecticut, he personally appeared, and a judgment was recovered against him for $25,000 damages together with costs. The plaintiff brought this declaratory judgment action against the defendant seeking (a) a declaration that the policy covered his wife's claim, (b) injunctive relief to compel the payment to his wife of the judgment recovered by her, with costs, and (c) money damages for himself in the amount of the attorneys' fees and witness fees he had been compelled to expend in defending his wife's action. Under the terms of the policy the defendant agreed to defend, and to pay any judgment rendered in, any suit within the coverage of the policy, even though the suit was groundless. Judgment was rendered for the defendant on the basis that, since the policy was issued in New York, the New York statute was "mandated into and made a part of" the plaintiff's insurance policy and therefore the policy did not cover the wife's claim. This appeal is from that judgment.

The general rule is that the validity and construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction. See cases such as *Chillingworth* v. *Eastern Tinware Co.,* 66 Conn. 306, 318, 33 A. 1009; *Craig & Co.* v. *Uncas*

*Paperboard Co.,* 104 Conn. 559, 564, 133 A. 673; *Levy* v. *Daniels' U-Drive Auto Renting Co.,* 108 Conn. 333, 338, 143 A. 163; *Graham* v. *Wilkins,* 145 Conn. 34, 39, 138 A.2d 705.

In the instant case, therefore, the law of New York will apply unless the contract was to have its operative effect elsewhere. The plaintiff's claim is that since the policy was to apply "within the United States of America, its territories or possessions, or Canada", its place of operative effect is wherever, within those territorial limits, an accident occurs. This claim hardly seems consistent with the purpose of the parties in entering into the contract. Presumably, that purpose was to fix in advance their rights and liabilities in the event of an accident, at least so far as the construction and interpretation of the contract are concerned, rather than to leave them dependent upon the fortuitous circumstance of the place of the accident. Indeed, the assumption underlying our applicable conflicts rule is that when parties enter into a contract they do so with the law of a specific jurisdiction in mind. *Chillingworth* v. *Eastern Tinware Co.,* supra. There is nothing in the instant case to suggest that this assumption is unfounded with respect to this insurance contract. On the contrary, in the declarations portion of the policy, the plaintiff stated that his residence was in Bronxville, New York, and that his automobile would be principally garaged there. This declaration gives no hint that the parties thought of this contract as other than a New York transaction. In the absence of a showing that the place of the operative effect of this contract was not New York, under our rule the validity and construction of the contract were governed by the law of New York, where the contract was made.

In 1955, in the absence of any relevant New York authority, this court held that § 167 (3) was not intended to apply to an accident occurring outside the state of New York. *Williamson* v. *Massachusetts Bonding & Ins. Co.,* 142 Conn. 573, 579, 116 A.2d 169. Since that time the New York Court of Appeals has held that (1) § 167 (3) "is mandated into and made a part of every policy of automobile liability insurance issued in this State [New York]", and (2) the legislature intended that the statute apply "no matter where the accident occurs". *New Amsterdam Casualty Co.* v. *Stecker,* 3 N.Y.2d 1, 5, 8, 143 N.E.2d 357. As New York law is to govern, the decision of New York's highest court authoritatively determines the construction of the contract of insurance in the light of the statute. *Roomy* v. *Allstate Ins. Co.,* 256 N.C. 318, 322, 123 S.E.2d 817.

The claim that the words "any person" in the policy satisfy the statute's requirement of specificity in including coverage in interspousal actions is without merit. Coverage for Patricia's injuries is excluded by virtue of § 167 (3). Nor has the plaintiff shown that it would be contrary to the public policy of Connecticut to apply the law of New York to this particular action, in which a New York resident is the insured, a New York resident is the injured party, and a Pennsylvania insurance corporation is the insurer.

This would be dispositive of the appeal, adversely to the plaintiff's contentions, but for the plaintiff's claims that the defendant has waived, or is estopped to avail itself of, any rights which it might have under § 167 (3).

Waiver was not specifically pleaded as it should have been, and estoppel was specifically pleaded although it need not have been. *DelVecchio* v. *Del-*

*Vecchio,* 146 Conn. 188, 195, 148 A.2d 554. Where, however, "facts are sufficiently set up in a pleading to warrant the inference of waiver, it will be considered though it is not expressly alleged". *Phoenix Mutual Life Ins. Co.* v. *Brenckman,* 148 Conn. 391, 395, 171 A.2d 194. The complaint contained allegations material to a claim of waiver, as well as to one of estoppel, and the court and counsel so treated it in the trial and on this appeal. Further facts must be stated for an understanding of our disposition of the claim of waiver. In view of our decision as to that claim, it will be unnecessary to consider the claim of estoppel.

On August 15, 1958, the day following the accident, the defendant, through its agents, was informed of the accident and that the plaintiff's wife had sustained injuries and was a claimant under the policy. On September 10, 1958, the defendant was informed by the wife's attorney that there were legal questions as to coverage in interspousal actions where a policy was written in New York and an accident occurred in Connecticut, and that no additional information would be furnished the defendant's investigators unless it was understood that the defendant would accept coverage of the wife's claim. Accordingly, on September 18, 1958, the defendant wrote the wife's attorney that it agreed to pay, "within the limits of . . . [the] policy and subject to its provisions," any final judgment which was rendered against the insured (the plaintiff herein) arising out of the accident. From September 10, 1958, to October 27, 1958, the defendant was actively engaged in attempting to adjust Patricia's claim against her husband. On October 27, 1958, the defendant first learned of the seriousness of Patricia's injuries and the extent of her

medical bills. On November 12, 1958, in a letter to her attorney, the defendant disclaimed coverage and stated that the defendant was not waiving the New York statute.

The plaintiff claims that the court's conclusion that waiver had not been proven is not supported by the subordinate facts found, including those as to the defendant's efforts to adjust the claim, and especially its letter of September 18, 1958, acknowledging coverage. The plaintiff further claims that from the subordinate facts waiver should be found as matter of law.

Waiver is the intentional reliquishment of a known right. *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 475, 196 A. 344; *Mishiloff* v. *American Central Ins. Co.,* 102 Conn. 370, 382, 128 A. 33; *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547, 173 A. 783; *Phoenix Mutual Life Ins. Co.* v. *Brenckman,* supra, 396. The court held that there was no waiver because "it did not appear that the defendant had any certain knowledge of its rights" under the New York Insurance Law. The court specifically found that the defendant was told by Patricia's attorney that there was a question as to the policy coverage in interspousal actions where, as here, a policy was written in New York and an accident occurred in Connecticut. Thus, the defendant knew of its right to claim that the New York Insurance Law denied coverage and of the possible, if not probable efficacy of such a claim. The *Stecker* case had been decided by the New York Court of Appeals long after the decision of this court in the *Williamson* case and some fifteen months before the date of the Jenkins accident. In order to waive a claim of law it is not necessary, contrary to the court's obvious conclusions, that a party be certain of the

correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. See *National Transportation Co.* v. *Toquet,* supra, 476. Under the court's theory, waiver of a claim of law could rarely, if ever, be established, since the defendant could always claim, as in effect it did here, that it knew nothing about, or at least did not fully understand, the law of New York, which, according to its own claims, governed the construction of its own contract of insurance. The conclusion that there was no waiver is unsupported by the subordinate facts found and cannot be sustained. See cases such as *Osuch* v. *Osuch,* 146 Conn. 90, 93, 148 A.2d 138; *National Transportation Co.* v. *Toquet,* supra; *O'Connor* v. *Metropolitan Life Ins. Co.,* 121 Conn. 599, 609, 186 A. 618.

There remains for consideration the claim of the plaintiff that the subordinate facts as matter of law require a conclusion of waiver, and that the case should be remanded to the trial court with a direction to render judgment for the plaintiff in accordance with his claims. The conclusion that a party has waived a right is one of fact for the trier and not one which can be drawn by this court, unless, on the subordinate facts found, such a conclusion is required as a matter of law. See *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 684, 116 A.2d 906.

In the light of the request of Patricia's attorney for a commitment as to coverage, as well as the defendant's attempts thereafter to adjust the claim, the letter of September 18, 1958, can be construed only as an intentional relinquishment of a known right. Furthermore, once a right is waived, the waiver cannot be withdrawn even if subsequent events prove the right waived to have been more

valuable than had been anticipated. *DiFrancesco* v. *Zurich General Accident & Liability Ins. Co.,* 105 Conn. 162, 169, 134 A. 789; 56 Am. Jur., Waiver, § 24. The defendant's letter of November 12, 1958, denying coverage because of the New York statute was ineffective to withdraw its waiver, and the court was in error in not drawing the conclusion of waiver from the subordinate facts which it had found.

The defendant deliberately denied coverage and refused to defend. It made no attempt to defend under a reservation. See *Basta* v. *United States Fidelity & Guaranty Co.,* 107 Conn. 446, 450, 140 A. 816; *Manthey* v. *American Automobile Ins. Co.,* 127 Conn. 516, 520, 18 A.2d 397. Because of the waiver, the claim that there was no coverage and the refusal to defend on that basis were erroneous, unjustified and a breach of the policy provision requiring the defendant to make a defense. 5A Am. Jur., Automobile Insurance, §§ 125, 127-129; note, 49 A.L.R.2d 694, 697, 711, 717, 721.

The question of the relief to be granted on the remand is complicated by the improper use of a declaratory judgment action. After Patricia's judgment had become final, she should have sued the defendant under § 38-175 of the General Statutes, and the plaintiff should have brought a simple action on the policy for damages for breach of the policy provisions requiring the defense of Patricia's claim and her action thereon. *Bartlett* v. *Travelers Ins. Co.,* 117 Conn. 147, 153, 167 A. 180; see also cases such as *Glens Falls Ins. Co.* v. *Somers,* 146 Conn. 708, 714, 156 A.2d 146. Both actions would naturally be tried together. Instead of following this simple procedure, the plaintiff brought the instant inappropriate declaratory judgment action. Patricia

was not made a party to this action, although she should have been if a declaratory judgment action was to be utilized at all. Practice Book § 309 (d); see cases such as *Corsino* v. *Grover,* 148 Conn. 299, 309, 170 A.2d 267; *Shelby Mutual Ins. Co.* v. *Williams,* 152 Conn. 178, 186, 205 A.2d 372. Furthermore, on the face of the complaint, there was another more appropriate remedy, and the court below should have refused to entertain a declaratory judgment action at all. Practice Book § 309 (c); *Scully* v. *Westport,* 145 Conn. 648, 653, 145 A.2d 742; *Redmond* v. *Matthies,* 149 Conn. 423, 426, 180 A.2d 639. The claims for relief included a prayer for a mandatory injunction compelling the defendant to pay Patricia the amount of her judgment. Such an unusual prayer for relief should have alerted the court and both parties to the impropriety of this declaratory judgment action. Injunctive relief to compel the payment of Patricia's judgment would ordinarily be denied on the ground of an adequate remedy at law in a direct action by Patricia under § 38-175. See cases such as *Holt* v. *Wissinger,* 145 Conn. 106, 116, 139 A.2d 353.

The record does not indicate that the parties, by pleading or otherwise, or the court itself, realized the impropriety of this action or the difficulties which flowed from its institution. Since the procedural error in the choice of remedy can be adequately corrected by a mere alteration of the judgment, we have decided not to prolong this litigation further; *Scully* v. *Westport,* supra, 654; and to treat the case as treated by the parties and the court below, except to note that there is no occasion for the rendition of any declaratory judgment. *Anselmo* v. *Cox,* 135 Conn. 78, 79, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405.

The breach of the terms of the policy made the defendant liable to pay the plaintiff his reasonable expenses in the defense of Patricia's suit against him. Cases supporting this proposition are collected in an annotation in 49 A.L.R.2d 721, § 12. It was stipulated that a reasonable attorney's fee would be $750 and that the reasonable expense of a medical expert witness employed in the defense of that suit would be $230.

The breach also made the defendant liable, at least in the absence of a plea of fraud or collusion, and none was made here, "for the amount of the judgment obtained in . . . [Patricia's] action against the insured". Note, 49 A.L.R.2d 718 (wherein cases supporting this proposition are collected). This judgment would also include Patricia's taxable costs as well as interest on the judgment under General Statutes § 37-3.

There is error, the judgment is set aside and the case is remanded for the rendition of a judgment (1) granting a mandatory injunction ordering the defendant to pay to Patricia A. Jenkins the amount of her judgment with taxable costs and legal interest, and (2) awarding money damages to the plaintiff in the amount of $980, together with his taxable costs in this proceeding.

In this opinion the other judges concurred.